IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **LARRY REYNOLDS,** | CASE NO. 3:20 CV 12 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **FCA US LLC,** | |
| | **MEMORANDUM OPINION AND** |
| Defendant. | **ORDER** |

## INTRODUCTION

This case arises out of Plaintiff Larry Reynolds's claims that his former employer, Defendant FCA US LLC, committed race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq. See* Doc. 1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Currently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 18), which Plaintiff opposes (Doc. 20), and to which Defendant has replied (Doc. 21). For the reasons discussed below, Defendant's motion is GRANTED.

## BACKGROUND

Viewing the facts in the light most favorable to Plaintiff, the background of this case is as follows:

Parties Involved

Plaintiff, who is African-American, was originally hired in April 1998 as a full-time production operator at Defendant's Toledo Machining Plant ("TMP"), where Defendant

manufactures steering columns and torque converters. (Plaintiff's Depo., at 31)[1]. Throughout his tenure with Defendant, Plaintiff was a member of the United Automobile, Aerospace, and Agricultural Workers of America Local 1435 (the "UAW"). *Id*. at 35. At all relevant times, Plaintiff's employment was governed by a collective bargaining agreement between Defendant and the UAW as well as a local contract with Defendant. *Id.* at 35-36. As part of the terms and conditions governing his employment, Plaintiff had an obligation to comply with Defendant's Standards of Conduct and other workplace policies. *Id.* at 36. One such policy was Defendant's Policy No. 3-6, which states in relevant part:

> FCA US LLC does not tolerate harassment of any kind in the workplace that has the effect of interfering with a person's work performance or creating an intimidating, hostile, or offensive work environment including harassment based on a person's race, color, sex, sexual orientation, gender identity, transgender status, age, protected veteran status, marital status, religion, national origin, disability status, or genetic information.
>
> . . .
>
> This policy specifically prohibits sexual harassment. "Sexual harassment" means unwelcome physical or verbal conduct that is either of a sexual nature, or directed to a person because of that person's sex, when . . . [s]uch conduct creates an intimidating, hostile, or offensive work environment.

(Doc. 16-3, at 1-2). Policy 3-6 encourages any employee who experiences or witnesses behavior in the workplace they believe violates the policy to report it to Defendant, but they may also file a complaint to the Equal Employment Opportunity Commission ("EEOC") or similar state agency (here, the Ohio Civil Rights Commission ("OCRC")). *Id.* at 2. Throughout his tenure at

---

1. Plaintiff's deposition is located at ECF Doc. 16-1. All references thereto are to the internal deposition page number, rather than the ECF page number.

TMP, Plaintiff amassed several suspensions and violations of Defendant's policies. (Doc. 16-5); (Plaintiff's Depo., at 42-43).[2]

May 2018 Complaint Against Plaintiff

In May 2018, one of Plaintiff's coworkers, Tamika Hill,[3] alleged Plaintiff harassed her during "some confrontation in [the TMP] break room" by yelling sexually offensive phrases and profanity, and gesticulating towards her to indicate he was talking to her. (Hermanutz Depo., at 7)[4]; (Doc. 20-6, at 3). A union committeeman presented the allegation to Defendant's Labor Relations Supervisor, Phil Hermanutz. (Doc. 20-6, at 3). In addition to the break room allegations, Hill alleged Plaintiff had posted a petition to the local union Facebook group seeking to remove Hill from her job, though Hermanutz was unsure of the details of the petition and did not recall seeing it posted anywhere on the TMP premises. (Hermanutz Depo., at 7). Upon receiving Hill's statement, Hermanutz interviewed witnesses present at the time of the break room incident and drafted a summary finding. *Id.* at 8. However, Hermanutz was unable to "find any conclusive information because the people [he] interviewed did not hear anything . . . [or] see anything", and thus he could not "substantiate . . . [Hill's] allegations." *Id.* at 8-9. Though the investigation did not amount to any formal discipline, Hermanutz warned Plaintiff not to retaliate or treat Hill in an unprofessional manner. *Id.* at 9-10.

---

2. Plaintiff's disciplinary record indicates he was disciplined for, *inter alia*, "Intimidating Others", "Threatening Others", "Using Abusive Language to Others", and "Disorderly Conduct". (Doc. 16-5).
3. Though Plaintiff and Hill offered varying descriptions of the nature of their prior relationship, it is undisputed the two had a "fallout" in early 2018, which led Plaintiff to draft the Facebook petition calling for Hill's termination. (Plaintiff's Depo, at 25-26, 31-32).
4. Hermanutz's deposition is located at ECF Doc. 20-7.

3

October 2018 Complaint Against Plaintiff

Hermanutz did not hear about any subsequent incidents between Plaintiff and Hill in the months following the May 2018 investigation. (Hermanutz Depo., at 11). However, in October 2018, Hill again complained of Plaintiff to Hermanutz, who began another investigation into Plaintiff's conduct. *Id.* at 11-12; *see also* Doc. 20-6, at 4. As with the May 2018 investigation, Hermanutz interviewed witnesses identified by Hill but was unable to substantiate Hill's claims due to lack of witness corroboration. (Hermanutz Depo., at 12). During the investigation, Hill provided Hermanutz with pornographic images and explicit messages she claimed Plaintiff sent her in December 2017 and January 2018, but Hermanutz did not consider them as part of his findings because "[his] main focus was what was happening [at] the plant on the premises". *Id.* at 12-13; (Doc. 20-6, at 4).

After Hermanutz informed Hill informed her claims could not be substantiated, Hill filed both a police report and a Charge of Discrimination with the OCRC in November 2018. *See* Doc. 20-6, at 11. Defendant's Manager of EEO Compliance and Governance, Dorothy Williams, subsequently retained outside counsel to "conduct a third-party, neutral investigation of the allegations". (Doc. 16-16).[5]

Outside Counsel Report and Plaintiff's Termination

As part of her investigation into Hill's complaint, Defendant's outside investigator interviewed eight witnesses, including Plaintiff and Hill. (Doc. 20-6, at 2). The investigator also reviewed text and Facebook messages between Plaintiff and Hill, investigation notes from Hermanutz and Human Resources Manager Ronda May, and summaries of witness statements previously obtained by Hermanutz and May. *Id.*

---

5. Attorney Kathleen J. Sanz of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. conducted the investigation. (Doc. 20-6, at 1).

During his interview with the investigator, Plaintiff admitted to both sending pornographic images to Hill via Facebook and text message and posting the Facebook petition to have Hill removed from her job, wherein he referred to Hill as a "Hood Rat" and a "THOT".[6] *Id.* at 6-7; *see also* Plaintiff's Depo., at 214-15, 221-22 (admitting the same). Plaintiff also admitted to the investigator (and later confirmed in his deposition) that he and other coworkers "typical[ly]" engage in "shop talk" in the break room, which usually involves profane and sexually explicit comments. (Doc. 20-6, at 7); (Plaintiff's Depo., at 130). Ultimately, the independent investigator concluded Plaintiff violated Defendant's Policy 3-6 by (1) sending sexually explicit messages to Hill; (2) posting a petition that contained derogatory terms about Hill to Facebook; and (3) using profanity and sexually explicit language in the break room. (Doc. 20-6, at 1).

After the investigator submitted her Investigation Summary Report to Williams on January 16, 2019, Defendant adopted the investigator's findings and terminated Plaintiff effective February 1, 2019 for his violations of Policy 3-6. (Doc. 20-6, at 1); (Doc. 16-11). Plaintiff's union (the UAW) subsequently filed a grievance on Plaintiff's behalf, after which the UAW and Defendant settled on reinstating Plaintiff to allow him to retire rather than terminating him. (Plaintiff's Depo., at 222-23); (Hermanutz Depo., at 17-18); (Doc. 16-13). However, Plaintiff did not accept this settlement and instead filed a Charge of Discrimination with the OCRC on April 18, 2019, alleging both race and age discrimination. (Plaintiff's Depo., at 230-31); (Doc. 16-14). As evidence to support his charge, Plaintiff submitted to the OCRC "a list of [sixteen] names from previous cases that were similar to [his] case." (Doc. 20-2). Ultimately, the OCRC found no probable cause that Defendant engaged in any unlawful discriminatory practice

---

6. According to the investigator, "THOT" is a colloquial acronym for "That Ho Over There." *See* Doc. 20-6, at 2, 5.

5

against Plaintiff; this finding was adopted by the EEOC in its Dismissal and Notice of Rights, issued on October 10, 2019. *See* Doc. 1-2.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

## DISCUSSION

Plaintiff's Complaint alleges age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, and racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The Court addresses each in turn.

6

Age Discrimination

Plaintiff alleges age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, contending Defendant terminated him because of his age (59 years old at the time of termination). *See* Doc. 1, at 3-4. In its Motion for Summary Judgment, Defendant asserts Plaintiff has not presented any evidence demonstrating he was replaced with a younger worker or treated less favorably than similarly-situated non-protected employees, and thus cannot meet his prima facie burden on this claim. (Doc. 18, at 9-10). In his opposition, Plaintiff "concedes that his age discrimination claim lacks factual support," and purports to "withdraw[]" the claim. (Doc. 20, at 12). Thus, because Plaintiff admittedly lacks evidence to support his age discrimination claim, summary judgment must be granted. *See* Fed. R. Civ. P. 56(c).

Race Discrimination

Plaintiff next asserts race discrimination under Title VII, 42 U.S.C. § 2000e. (Doc. 1, at 4-5). He contends he was replaced by an individual of a different race upon termination and that Caucasian employees were disciplined to a lesser degree in "substantially similar situations." *See id.* at 5. Plaintiff further alleges the purported reason for his termination, violation of Policy 3-6, was "false and pretextual." *See id.*

Title VII expressly prohibits employers from treating employees differently according to their race. *See* 42 U.S.C. § 2000e-2(a)(1). When a plaintiff does not put forth direct evidence of racial discrimination, this Court applies the burden-shifting analysis established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and later modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). This framework places the initial burden on Plaintiff to establish his prima facie case. *Burdine*, 450 U.S. at 252-53 (citing *McDonnell Douglas*, 411 U.S. at 802). To satisfy this burden, the plaintiff must show "(1) [he] was a

7

member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006) (internal citations and quotations omitted). If the plaintiff can establish a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the termination. *Burdine*, 450 U.S. at 252-53 (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant articulates such a reason, the burden shifts back to the plaintiff to demonstrate the proffered reason was a mere pretext for discrimination. *Id.* at 253.

*Prima Facie Case*

Defendant contends it is entitled to summary judgment because Plaintiff has no evidence to create a genuine issue of material fact regarding the fourth prong of his prima facie case. (Doc. 18, at 10-11). Specifically, Defendant asserts Plaintiff has not shown he was treated differently than similarly situated employees of a different race. *Id.* at 11-12; *see also* Doc. 20, at 7.

Plaintiff responds he has identified "other employees [who] received lesser discipline for violations of policy 3-6," including "a supervisor [who] was charged for [violation of Policy 3-6] but nothing came up." (Doc. 20, at 7).

To satisfy the similarly-situated prong, the Sixth Circuit historically required plaintiffs to point to "comparable[]" employees who are "similarly-situated *in all respects*", meaning individuals who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis added). The Sixth Circuit has since

8

clarified that "[a] court's formulation of the similarly-situated inquiry should not be exceedingly narrow", and individuals are considered similarly situated "if they are similar (though not identical) in *all relevant respects*." *Lynch v. ITT Educ. Servs., Inc.*, 571 F. App'x 440, 444 (6th Cir. 2014) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)) (emphasis added). Thus, "the appropriate test is to look at [the *Mitchell*] factors relevant to the factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects." *Jackson v. FedEx Corp. Servs.*, 518 F.3d 388, 396 (6th Cir. 1998) (internal citations omitted).

Plaintiff attempts to identify similarly situated employees in two ways. First, he cites his deposition testimony regarding a Caucasian employee "who was harassing this one chick," and whom he "think[s] [] got a week off work." *See* Doc. 20, at 7; Plaintiff's Depo., at 236-38. Second, he references a letter he sent to the OCRC that lists the names of sixteen other employees who allegedly received more favorable treatment for similar incidents. (Doc. 20, at 7) (citing Doc. 20-2). Defendant objects to this evidence. First, it argues Plaintiff's deposition testimony on this point is inadmissible and based on hearsay because Plaintiff admitted "he was not working at TMP when the situation . . . occurred, he has 'no idea' who made the decision to discipline the employee involved, and he has no personal knowledge about the nature of the alleged harassment." (Doc. 18, at 11) (quoting Plaintiff's Depo., at 237). Second, it argues the OCRC letter is insufficient to establish differential treatment because it does not identify the race of these listed individuals nor any information about who their supervisors were or the standards to which they were held. (Doc. 21, at 3). The Court agrees with Defendant.

First, as to the identified Caucasian employee, Plaintiff admitted in his deposition he did not witness the alleged incident, nor did he have personal knowledge as to who suspended the

9

employee, or what the actual suspension term was. *See* Plaintiff's Depo., at 239 ("Q: Okay. So you [Plaintiff] don't have any personal knowledge as to the facts of what occurred, right? A: No. I don't have -- no. Based on what I heard. I'm only going by what I heard."). Plaintiff moreover confessed his source for this information was "rumors" relayed to him by a senior manager. *See id.* at 238-29. Because Plaintiff admittedly has no personal knowledge of the treatment of this employee, his testimony is plainly hearsay and thus cannot be considered by the Court as evidence for deciding a summary judgment motion. *See, e.g.*, *Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012) ("It is well established that a court may not consider hearsay when deciding a summary judgment motion.") (citations omitted); *see also* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").[7]

Even if it were admissible on this point, Plaintiff's testimony is insufficient to support the similarly-situated prong. Indeed, Plaintiff admitted in his testimony he did not work in the same department as the Caucasian employee he alleges received more favorable treatment than him. (Plaintiff's Depo., at 241). Plaintiff further admitted he was unaware of "who made the decision to discipline" the Caucasian employee and lacked personal knowledge of how long the employee's actual suspension was. *Id.* at 237, 239. Because employees being compared must be similarly-situated "in *all relevant respects*," Plaintiff's identification of this Caucasian employee—even if admissible—would not support his prima facie case because it is unclear how the employee is similar in any respect to Plaintiff. *See Lynch*, 571 F. App'x at 444.

Second, Plaintiff's other main piece of evidence—his letter to the OCRC—likewise does not satisfy his burden on the similarly-situated prong. *See* Doc. 20-2. The letter, sent to the

---

7. Plaintiff himself admits on three instances in his opposition brief that his deposition testimony regarding other employees is "somewhat hazy". (Doc. 20, at 4, 7, 10).

OCRC on June 18, 2019 as part of the OCRC investigation into Plaintiff's charges prior to the commencement of this action, purports to provide "a list of names from previous cases that were similar to [Plaintiff's] case." *Id*. "[N]ames" are all the letter provides, however. The letter does not specify the race, employment position, or any identifiable characteristics of these individuals named, nor does it provide any information regarding the alleged conduct or punishment the individuals received. *See id*. Absent evidence of the race of the individuals, the letter cannot provide evidence of "similarly-situated, *non-protected* employees." *Wright*, 455 F.3d at 706 (emphasis added). Moreover, because the Court is left to wonder how the named individuals were similarly-situated in *any* respect to Plaintiff, the letter certainly cannot provide the necessary evidence that these individuals were similarly-situated "in *all relevant* respects." *Lynch*, 571 F. App'x at 444 (emphasis added). The OCRC letter therefore amounts to no more than conclusory allegations that are insufficient to establish a prima facie case and survive summary judgment. *See, e.g.*, *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) (conclusory allegations are insufficient to defeat a summary judgment motion).

Finally, Plaintiff cites, without explanation, a collection of letters from Defendant to the OCRC in which Defendant refutes the alleged incidents involving coworkers listed in Plaintiff's letter to the OCRC (Doc. 20-2). *See* Doc. 20, at 7 (citing Doc. 20-3). Though Defendant makes no argument regarding these letters in its Motion or Reply, the letters still do not support Plaintiff's prima facie burden. Specifically, even though the OCRC letters provide some context as to the circumstances surrounding disciplinary actions against Plaintiff's coworkers, they lack information regarding each coworkers' race. *See* Doc. 20-3.[8] Thus, as with Plaintiff's OCRC

---

8. On the contrary, Defendant's responses to the OCRC point out how the individuals cited by Plaintiff are *not* similarly situated to Plaintiff. *See, e.g.*, Doc. 20-3, at 4 (discussing how one of the incidents Plaintiff cites involved racial slurs as opposed to Plaintiff's alleged conduct).

11

letter, this evidence fails to support Plaintiff's prima facie burden because it does not provide evidence of "similarly-situated, *non-protected* employees." *Wright*, 455 F.3d at 706 (emphasis added).

In sum, none of the evidence Plaintiff cites to support his similarly-situated argument is sufficient to satisfy the fourth prong of a prima facie case for racial discrimination under the *McDonnell Douglas / Burdine* burden-shifting framework established. Summary judgment is thus warranted on Plaintiff's racial discrimination claim based on this evidentiary failure alone. *See* Fed. R. Civ. P. 56(c). For clarity's sake, however, the Court will address the second and third steps of the burden-shifting framework below.

*Legitimate, Non-Discriminatory Reason*

Assuming, *arguendo*, Plaintiff established a prima facie case, the burden would shift to Defendant to articulate a legitimate, non-discriminatory reason for terminating Plaintiff. *Burdine*, 450 U.S. at 252-53 (citing *McDonnell Douglas*, 411 U.S. at 802). This is a deferential burden "of production, not of persuasion," as Defendant must "simply explain[] what [it] has done or produce[] evidence of legitimate nondiscriminatory reasons." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585-86 (6th Cir. 2009) (internal citations and quotations omitted). Defendant has clearly satisfied this burden by offering a legitimate, non-discriminatory reason for Plaintiff's termination: he violated Defendant's Policy No. 3-6. *See* Doc. 16-11.

*Pretext*

The burden would then shift back to Plaintiff to prove by a preponderance of evidence that Defendant's proffered reason was a pretext for discrimination. *Burdine*, 450 U.S. at 253. Plaintiff can establish pretext by showing Defendant's justification "(1) has no basis in fact; (2) did not actually motivate [his] termination; or (3) was insufficient to warrant [his] termination."

*Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 502 (6th Cir. 2007) (internal citations omitted). "[A] reason cannot be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (internal alteration, citation, and quotation omitted). Thus, at this stage, Plaintiff retains the ultimate burden of producing "sufficient evidence from which the jury could reasonably reject [Defendant's] explanation and infer that [Defendant] intentionally discriminated against him." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (internal citations and quotations omitted).

Plaintiff offers a variety of explanations for why Defendant's proffered justification was "insufficient to motivate FCA's decision to terminate [him]", repeating many of the same arguments he uses for his prima facie case. (Doc. 20, at 9). He first asserts Defendant's proffered reason is insufficient because the initial investigations by Hermanutz into Hill's complaints against Plaintiff "did not find any conclusive information", thus ostensibly arguing that Defendant's reason had no basis in fact. *Id.* at 10 (quoting Hermanutz Depo., at 8). To prove pretext under this "no basis in fact" method, Plaintiff must show more than a dispute about the underlying facts. Under the Sixth Circuit's "modified honest-belief" doctrine, "for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Wright*, 455 F.3d at 708 (internal citations and quotations omitted). After Defendant establishes this, Plaintiff may introduce contrary evidence, but the decision to terminate need not be optimal, but rather only "reasonably informed and considered". *See id.*

As Defendant points out on Reply, that the initial investigations into Plaintiff's conduct did not bear any conclusive information is not sufficient to establish a genuine issue of material

13

fact. *See* Doc. 21, at 4. On the contrary, following the initial investigations, Plaintiff admitted to conduct that violated Policy 3-6 during the investigation by outside counsel. *See* Doc. 20-6, at 1-2; Plaintiff's Depo, at 103-12. Given the breadth of information reviewed by outside counsel during this subsequent investigation and Plaintiff's own admission that he engaged in the conduct that was the basis for his termination, Defendant has established it reasonably relied on particularized facts before it at the time to come to a decision about Plaintiff's termination. *See* Doc. 20-6, at 6-7; *Wright*, 455 F.3d at 708. It can hardly be said, therefore, that the information relied upon to terminate Plaintiff had "no basis in fact". *See Abdulnour*, 502 F.3d at 502. The evidence cited by Plaintiff—namely, Hermanutz's deposition—does not raise an inference strong enough to overcome the modified honest-belief doctrine and is thus insufficient to prove pretext. *See Wright*, 455 F.3d at 708.

Second, Plaintiff attempts to prove pretext by repeating his prima facie argument that non-African American employees were not terminated for engaging in similar misconduct, which seemingly goes towards the second method of proving pretext—that the stated reason for termination was not the actual reason. (Doc. 20, at 10).[9] As discussed above, the evidence underlying this assertion is inadmissible at the summary judgment stage. *See Tranter*, 460 F. App'x at 514. Thus, because Plaintiff is left with nothing more than conclusory allegations, he has not provided evidence to support an inference that racial discrimination was "more likely" Defendant's motivation than Defendant's proffered reason. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000).

Third, Plaintiff attempts to rely on a statement from his union steward, Naomi Martin, to support the assertion that "Defendant itself had already determined that the allegations against

---

9. Indeed, this portion of Plaintiff's argument includes his third repetition of the same alleged facts. *See also* Doc. 20, at 4, 7.

14

Mr. Reynolds were not enough to merit termination." (Doc. 20, at 10-11) (citing Doc. 20-4). Defendant makes two arguments on Reply. First, it argues the document is inadmissible at the summary judgment stage because it is an unsworn statement. (Doc. 21, at 3). Second, it asserts even if the statement were admissible, it would still "fail[] to demonstrate [Plaintiff] was treated differently than similarly situated coworkers based on his race." *Id.* The Court agrees with Defendant (Doc. 21, at 3) that, regardless of the statement's admissibility, the statement says nothing about *why* Defendant terminated Plaintiff and instead merely describes Martin's personal belief that the incidents between Plaintiff and Hill "never should have gone to HR" (Doc. 20-4). Martin even admits in the statement "[she] do[es] not direct the work force," which further demonstrates the irrelevancy of this evidence to a pretext argument because it provides no information from which a jury "could reasonably reject [Defendant's] explanation and infer that [Defendant] intentionally discriminated against [Plaintiff]." *Johnson*, 319 F.3d at 866 (internal citations and quotations omitted).

Fourth, Plaintiff attempts to show pretext by asserting the outside investigation was insufficient because "not a single witness could definitively attribute any inappropriate statement about Ms. Hill to [Plaintiff]." (Doc. 20, at 11). Several problems underlie this line of reasoning. First, even taking the facts in the light most favorable to Plaintiff, Plaintiff's statement about a lack of witness corroboration overlooks corroboration from the most important witness: Plaintiff himself, who admitted to conduct that violated Policy 3-6. *See* Doc. 20-6, at 1-2; Plaintiff's Depo., at 103-12. Second, as Defendant asserts on Reply, it is irrelevant to a pretext inquiry whether an employer's ultimate conclusion "is later shown to be mistaken, foolish, trivial, or baseless" so long as the employer "reasonably and honestly relies on particularized facts in making an employment decision." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

15

Thus, even if Defendant relied on information from outside counsel that was deficient in some way in hindsight, Plaintiff cannot establish pretext if Defendant's belief in the information was reasonable and honest at the time of termination. *See id.*; *see also Miles v. S. Cen. Hum. Res. Agency, Inc.*, 946 F.3d 883, 886 (6th Cir. 2020) ("[A]n employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.") (internal citations and quotations omitted). Based on the comprehensive investigation performed by outside counsel and Defendant's explicit mention of the investigation in Plaintiff's termination paperwork, Defendant has established its reliance on the information available to it was reasonable and honest and Plaintiff has not provided evidence to the contrary. (Doc. 16-11); (Doc. 20-6); *see Chen*, 580 F.3d at 400.

Fifth, and finally, Plaintiff attempts to show pretext by asserting Hill engaged in substantially similar conduct as him but was not disciplined. (Doc. 20, at 12). Specifically, Plaintiff alleges Hill "also engaged in making explicit statements to [Plaintiff], and responded to his text messages, but she was not disciplined for doing so." *Id.* This assertion is insufficient to prove pretext. By pointing out Hill's alleged conduct in comparison to his own, Plaintiff is ostensibly attempting to argue Defendant's proffered reason was insufficient to warrant his termination because similar action was not taken against a similarly-situated employee. *See Gunn v. Senior Servs. of N. Ky.*, 632 F. App'x 839, 847-48 (6th Cir. 2015). The standard for proving pretext under this method is akin to the similarly-situated prong of a prima facie analysis: Plaintiff must "demonstrate that other employees outside of [his] protected class were not fired, even though they were similarly situated and engaged in substantially identical conduct to that which the employer contends motivated its decision." *Id.* at 848 (citing *Smith*, 220 F.3d at 762). Plaintiff clearly does not satisfy this burden because, as Defendant points out in Reply, Hill

16

is also African-American and thus not "outside of [Plaintiff's] protected class". *Id.* Thus, even taking Plaintiff's assertion in the light most favorable to him, that Hill may have engaged in such conduct does not raise an inference that racial discrimination was "more likely" Defendant's motivation that Defendant's proffered reason. *See Smith*, 220 F.3d at 759.

The legal sufficiency of Plaintiff's contention aside, that Hill engaged in similar conduct to Plaintiff is factually unsupported. Plaintiff does not support his assertion regarding Hill with any record evidence, as there is no indication in the outside counsel's report that Plaintiff ever reported Hill "making explicit statements to [him]". *See* Doc. 20-6, at 6-7.[10] Thus, even if Plaintiff now testifies to Hill engaging in similar conduct, because the outside investigator never reported Hill making such statements and Plaintiff has not presented any evidence Defendant was aware of such, Plaintiff cannot show Defendant failed to "reasonabl[y] rel[y] on the particularized facts that were before it at the time the decision was made." *See Wright*, 455 F.3d at 708.

Plaintiff offers many purported reasons why his termination was pretextual. Some of them misstate the facts. Some of them have no bearing on the Sixth Circuit's standard for proving pretext. But all of them fail to establish "sufficient evidence from which the jury could reasonably reject [Defendant's] explanation and infer that [Defendant] intentionally discriminated against him." *Johnson*, 319 F.3d at 866 (internal quotations and citations omitted). Therefore, even assuming Plaintiff could establish a prima facie case, the Court would still find Defendant entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

---

10. On the contrary, Plaintiff admits Hill specifically told him to stop sending her sexually explicit messages. (Plaintiff's Depo., at 113-14).

17

ORDERED that Defendant's Motion for Summary Judgment (Doc. 18) be, and the same hereby is, GRANTED.

      s/ *James R. Knepp II*
      UNITED STATES DISTRICT JUDGE